UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            v.                       )        CRIMINAL ACTION
                                     )        NO. 04-1685-CBS
JOSE ROSALES, a/k/a Tony,            )
a/k/a Tono, a/k/a Joel Agostini;     )
HOWARD GREENBERG, a/k/a Howie; and   )
LUIS DEJESUS, a/k/a Edgardo, ET AL,  )
            Defendants,              )
_____ )
```

MEMORANDUM OF PROBABLE CAUSE AND
ORDER OF DETENTION
June 8, 2004

SWARTWOOD, M.J.

I.   Nature of the Offense and the Government's Motion

On February 26, 2004, a Criminal Complaint was filed, charging multiple individuals, including Jose Rosales, a/k/a Tony, a/k/a Tono, a/k/a Joel Agostini ("Mr. Rosales"), Howard Greenberg, a/k/a Howie ("Mr. Greenberg") and Luis DeJesus, a/k/a Edgardo ("Mr. DeJesus")(collectively "Defendants"), with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

At these Defendants' initial appearance on May 3, 2004, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C.

§§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

Following his arrest, Mr. Greenberg was released on conditions.  On May 26, 2004, a probable cause hearing was held with respect to Messrs. Rosales, Greenberg and DeJesus which was consolidated with a detention hearing for Messrs. Rosales and DeJesus.  At the probable cause/detention hearing, Jean Drouin, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Defendants' counsel.

## II.  <u>Findings of Fact</u>

1.  Special Agent Drouin is the case agent in connection with an investigation concerning the distribution of multiple kilograms of cocaine in the North Shore area of Massachusetts.  This investigation commenced in January 2003 and concluded on May 1, 2004 with the arrest of more than twenty defendants.  During this investigation, Special Agent Drouin and other law enforcement officials involved in this investigation, used informants, undercover agents, global positioning systems ("GPS") on four automobiles, surveillance of individuals and locations, Department of Motor Vehicles ("DMV") photographs for identification of individuals involved in this investigation, recorded and monitored

2

controlled purchases of cocaine and Title III wire intercepts on approximately twenty-one telephones.

2.     Primarily as a result of wire intercepts, law enforcement officials were alerted that a multi-kilogram load of cocaine was to be delivered in late April or early May 2004 to the organization which was the subject of this investigation.  Following up on these wire intercepts, law enforcement officials arrested over twenty defendants which the Government alleges were involved in a conspiracy to distribute multiple kilograms of cocaine in the North Shore of Massachusetts.  As a result of these arrests, approximately 50 kilograms of cocaine and a substantial amount of cash were seized.

3.     <u>Howard Greenberg</u>.  There are approximately fifty intercepts of telephone conversations between Mr. Greenberg and Mr. Rosales.  It is clear from these conversations that Mr. Greenberg was a customer of Mr. Rosales and that he was purchasing sufficient amounts of cocaine for further distribution.  On one occasion in August 2003, law enforcement officials intercepted a call between Mr. Rosales and Mr. Greenberg in which Mr. Greenberg requested "a half" and then law enforcement officials followed Mr. Rosales as he left his residence and went to Mr. Greenberg's house in response to their prior conversation for the sale of cocaine.

4.     <u>Mr. Rosales</u>.  Mr. Rosales is alleged to have performed a leadership role in the cocaine conspiracy which is the subject of this Criminal Complaint.  Over a long period of time, four or five

3

of Mr. Rosales' telephones were intercepted.  During this five month period, Mr. Rosales was monitored and recorded making numerous arrangements with other members of the conspiracy for payment of  amounts due for cocaine sold and making arrangements for the sale of cocaine.  On March 20, 2003, a confidential witness ("CW") met Mr. Rosales at a pre-arranged location for the purpose of purchasing cocaine.  On this occasion, the CW got into Mr. Rosales' automobile where he purchased five ounces of cocaine for $4,000.

    5.  <u>Mr. DeJesus</u>.  Law enforcement officials intercepted a series of calls from Mr. DeJesus to Valentin Martinez.  During one of these intercepted conversations, Mr. DeJesus and Mr. Martinez made arrangements to meet at a barber shop in Lynn for the purpose of purchasing cocaine.  Law enforcement surveillance later established that both Messrs. DeJesus and Valentin Martinez were at or near the barber shop.  Later during this investigation, Mr. DeJesus was intercepted talking to Mr. Rosales where they discussed the purchase of a half a kilogram of cocaine for approximately $13,000 (one-half of the then going rate of $26,000 a kilo).

### III.  Probable Cause

I find that law enforcement officials had intercepted and recorded telephone conversations between Mr. Rosales and Messrs. Greenberg and DeJesus during which arrangements were made for the sale of large amounts of cocaine.  On one occasion, Mr. Rosales was seen going to Mr. Greenberg's house in response to Mr. Greenberg's request for cocaine; Mr. Rosales met Mr. DeJesus at a barber shop in Lynn as a result of an intercepted call requesting cocaine; and Mr. Rosales was involved in a controlled purchase of five ounces of cocaine for $4,000 on March 20, 2003, with a CW.  Therefore, I find that there is probable cause for the offense of conspiracy to possess with intent to distribute cocaine as charged in this Complaint.

### IV.  The Bail Reform Act

#### A.  Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18

U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).  The Supreme Court, in <u>United States v. Salerno</u>, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>Id.</u> at 755, 107 S.Ct. at 2105.  For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight.  <u>See</u> 18 U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). <u>See</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991).  Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person".  18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted.  <u>See</u> 18 U.S.C. § 3142 (f)(1).  The Government may also move for detention, or the judicial officer may on his or her own

6

motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant  and the safety of the community against any danger posed by the Defendant's pretrial release.  See  United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

        In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e).  Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no

7

condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

    (1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)   the weight of the evidence against the person;

    (3)   the history and characteristics of the person, including:

        a.   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        b.   whether, at the time of the current offense or arrest, he was on probation, on parole, or

other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### V.  Discussion of Whether Detention is Warranted

#### A.  Mr. Rosales' History and Characteristics

Mr. Rosales was not interviewed by Pretrial Services and a check with Immigration and Customs Enforcement Agency, reveals no record of Mr. Rosales and therefore, Pretrial Services concludes that he is an illegal alien.  Mr. Rosales is married and has three children, who presumably live in the North Shore area of Massachusetts.

#### B.  Mr. DeJesus' History and Characteristics

Mr. DeJesus was born on November 1,1966, in Puerto Rico, where he lived until age twenty.  In approximately 1986, Mr. DeJesus came to the mainland United States, where he resided for a period of time in Philadelphia, Pennsylvania and New York, New York and for approximately five years, in Lynn, Massachusetts.  For the past year, Mr. DeJesus has lived with a roommate in Lynn, Massachusetts and prior to that, he was incarcerated for five years on a drug conviction.

Mr. DeJesus' parents reside in Puerto Rico and he has four siblings, but does not know where they presently live.  Mr. DeJesus

reports that after his prior arrest and incarceration, he has lost all contact with his family.

Mr. DeJesus states that at the time he was arrested he bought and sold automobiles. Approximately three months ago, Mr. DeJesus worked at a mini-market in Lynn, Massachusetts, where he had worked since 2002.

On August 29, 1997, Mr. DeJesus was charged in the Essex Superior Court with possession of a Class A controlled substance and subsequently on February 9, 1998, he pled guilty to that offense and was placed on two years probation. Also on August 29, 1997, Mr. DeJesus was charged with trafficking in controlled substances for which he pled guilty on February 9, 1998 and for which, he received a five to five years and one day sentence.

C. Nature of the Offense and Weight of the Evidence

I have previously found probable cause for the offense charged against these Defendants in this Complaint. Both Messrs. Rosales and DeJesus were intercepted and recorded making arrangements for the sale of cocaine. Therefore, I find that the weight of the evidence against Messrs. Rosales and DeJesus is substantial.

D.  <u>Rebuttable Presumption</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Messrs. Rosales and DeJesus were released, or the appearance of Messrs. Rosales and DeJesus as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Messrs. Rosales and DeJesus are charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have found probable cause exists for the offense charged against both Messrs. Rosales and DeJesus in the Complaint. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of both Messrs. Rosales and DeJesus or the safety of the community if they were released. I find that neither Mr. Rosales nor Mr. DeJesus has produced or proffered any credible evidence on their own behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. <u>United States v. Alatishe</u>, 768 F.2d 364, 371 (D.C. Cir. 1985); <u>United States v. Vires</u>, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Messrs. Rosales and DeJesus have failed to rebut the presumption, for the sake of

completeness, I will examine the Government's assertion that they pose a danger to the community and a risk of flight.

### E.  Burden of Proof

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Messrs. Rosales and DeJesus were released, or the appearance of Messrs. Rosales and DeJesus as required.

The Government's burden of proof is by:

1.  *Clear and convincing evidence* that Messrs. Rosales and DeJesus, if released, would pose a serious danger to any person or the community, or

2.  A *preponderance of the evidence* that Messrs. Rosales and DeJesus, if released, would not appear as required.

### F.  Whether Mr. Rosales Poses A Danger to the Community

From the recorded intercepts of four or five of Mr. Rosales' telephones, it is clear that he performed a leadership role in the conspiracy charged in this Complaint.  Mr. Rosales had constant contact with many of the Defendants charged in this Complaint and dealt in the sale of large amounts of cocaine.  Therefore, I find by clear and convincing evidence that Mr. Rosales poses a danger to the community and that there are no conditions or combination of

conditions that will assure the safety of any person or persons in the community if he were released.

      G.   <u>Whether Mr. Rosales Poses A Risk Of Flight</u>

     Mr. Rosales is an illegal alien who has no legal right to remain in this country. If he is found guilty of the offenses charged in this Complaint, he will be deported after having served what could be a substantial period of incarceration. Under the totality of the circumstances, Mr. Rosales has no incentive to remain in the country and face trial for the offenses charged against him in this Complaint. Therefore, I find by a preponderance of the evidence that Mr. Rosales poses a risk of flight and that there are no conditions or combination of conditions that I could impose that would assure his appearance in Court as directed.

      H. <u>Whether Mr. DeJesus Poses A Danger to the Community</u>

     Mr. DeJesus has a record for trafficking in controlled substances for which he was incarcerated for five years. Within a short time from his being released for serving a sentence for a drug trafficking, Mr. DeJesus became involved in this conspiracy. Therefore, I find by clear and convincing evidence that Mr. DeJesus poses a danger to the community and that there are no conditions or combination of conditions that will assure the safety of any person or persons in the community if he were released.

I.  <u>Whether Mr. DeJesus Poses A Risk Of Flight</u>

Mr. DeJesus has lost all contact with his family and has no other ties to this or any other District.  Mr. DeJesus faces a substantial period of incarceration if convicted of the offenses charged against him in this Complaint.  Under these circumstances, I find by a preponderance of the evidence that Mr. DeJesus poses a risk of flight and that there are no conditions or combination of conditions that I could impose that would assure his appearance in this Court as directed.

VI.  <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.  That Messrs. Rosales and DeJesus be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  That Messrs. Rosales and DeJesus be afforded a reasonable opportunity for private consultation with counsel; and

3.  On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Rosales and DeJesus are detained and confined shall deliver Messrs. Rosales and DeJesus to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).


/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE